# Exhibit A

PACIFIC TRIAL ATTORNEYS
A Professional Corporation
Scott J. Ferrell, Bar No. 202091
sferrell@pacifictrialattorneys.com
Victoria C. Knowles, Bar No. 277231
vknowles@pacifictrialattorneys.com
4100 Newport Place, Suite 800
Newport Beach, CA  92660
Tel: (949) 706-6464
Fax: (949) 706-6469

Attorneys for Plaintiff

## SUPERIOR COURT OF THE STATE OF CALIFORNIA

## FOR THE COUNTY OF SAN DIEGO

| | |
|---|---|
| ABELARDO MARTINEZ, an individual,<br><br>Plaintiff,<br><br>v.<br><br>SAN DIEGO COUNTY CREDIT UNION, a California corporation; and DOES 1-10, inclusive,<br><br>Defendants. | Case No.  37-2017-00024673-CU-CR-NC<br>Assigned to Hon. Ronald F. Frazier<br>Dept. N-29<br><br>**PLAINTIFF'S TRIAL BRIEF**<br><br>Date Filed: July 7, 2017<br>Trial Date: November 13, 2018 |

1

## TABLE OF CONTENTS

2   I.    INTRODUCTION ....................................................................................................3

3   II.   ELEMENTS FOR A WEBSITE ACCESSIBILITY CAUSE OF ACTION ...................7

4   III.  THE WEBSITE CONTENT ACCESSIBILITY GUIDELINES ("WCAG")
          PROVIDE THE INDUSTRY STANDARD FOR WEBSITE
5         ACCESSIBILITY AND ARE RELIED UPON BY DEFENDANT'S OWN
          PERSON MOST KNOWLEDGEABLE. ......................................................................10

6

7   IV.   PLAINTIFF'S CAUSE OF ACTION DOES NOT VIOLATE
          DEFENDANT'S DUE PROCESS RIGHTS. ............................................................11

8         A.    The DOJ Has Consistently Maintained that Commercial Websites Are
                Subject to the ADA For Over 20 Years. ......................................................12
9
          B.    Courts Are *Repeatedly* Rejecting Defendant's Due Process Argument. ...........13
10
          C.    The DOJ Withdrew Its Advance Notice of Public Rulemaking and
11              *Still* Enforces Website Accessibility Under the ADA Utilizing WCAG
                2.0, Level AA. ......................................................................................16
12
    V.    PLAINTIFF'S REQUEST FOR A PUNITIVE DAMAGES INSTRUCTION
13        IS SUPPORTABLE. ..............................................................................................17

14  VI.   PLAINTIFF'S REQUEST FOR JUDICIAL NOTICE REGARDING
          CENSUS DATA IS SUPPORTABLE. .....................................................................17
15
    VII.  PLAINTIFF MAY SUBMIT EVIDENCE OF ACCESSIBILITY BARRIERS
16        OTHER THAN THOSE IDENTIFIED IN THE COMPLAINT *AND*
          INTERROGATORY RESPONSES. .........................................................................18
17

18

19

20

21

22

23

24

25

26

27

28

# TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*Access Now, Inc., et al. v. Blue Apron, LLC*
    (D.N.H., Nov. 8, 2017, No. 17-CV-116-JL) 2017 WL 5186354 ....................14

*Andrews v. Blick Art Materials, LLC*,
    No. 17-CV-767, 2017 WL 3278898 (E.D.N.Y., Aug. 1, 2017) ......................14

*Butler v. Adoption Media, LLC*,
    486 F. Supp. 2d 1022 (N.D. Cal. 2007)...........................................................9

*Castillo v. Jo-Ann Stores, LLC*,
    286 F. Supp. 3d 870 (N.D. Ohio Feb. 13, 2018) ...........................................16

*Chapman v. Pier One Imports (U.S.), Inc.*,
    631 F.3d 939 (9th Cir. 2011) ...................................................................7, 19

*Del-Orden v. Bonobos, Inc.*
    (S.D.N.Y., Dec. 20, 2017, No. 17 CIV. 2744 (PAE)) 2017 WL 6547902 ......................15

*Disabled Rights Action Committee v. Las Vegas Events, Inc.*,
    375 F.3d 861 (9th Cir. 2004) ........................................................................12

*Fortyune v. City of Lomita*,
    766 F.3d 1098 (9th Cir. 2014), *cert. denied*, 135 S. Ct. 2888 (2015) ............12

*Gathers v. 1-800-Flowers.com, Inc.*,
    2018 WL 839381 (D. Mass. Feb. 12, 2018) .................................................16

*Gil v. Winn Dixie Stores, Inc.*,
    242 F .Supp.3d 1315, 1318-1319 S.D. Fla. 2017) ..........................................8

*Gil v. Winn-Dixie Stores, Inc.*,
    2017 WL 2547242 (S.D. Fla. June 13, 2017)....................................9, 10, 14

*Gil v. Winn-Dixie Stores, Inc.*,
    257 F.Supp.3d 1340 (S.D. Fla. June 13, 2017)..............................................14

*Gorecki v. Hobby Lobby Stores, Inc.*,
    2017 WL 2957736 (C.D. Cal. CV 17-1131-JFW (SKx)) (June 15, 2017)...................8, 13

*M.R. v. Dreyfus*,
    697 F.3d 706 (9th Cir. 2012) ........................................................................12

*Market! v. Five Guys Enterprises LLC*,
    2017 WL 5054568 (S.D.N.Y. No. 17-CV-788 (KBF)) (July 21, 2017) ............8

*Molski v. M.J. Cable, Inc.*,
    481 F.3d 724 (9th Cir. 2007) ..........................................................................7

*Nat'l Ass'n of the Deaf v. Harvard Univ.*,
    Case 3:15-cv-30023-MGM [ECF #33] (D. Mass. June 25, 2015) .............12, 13

PLAINTIFF'S TRIAL BRIEF

*National Fed. of the Blind, et al. v. HRB Digital LLC, et al.*,
  No. 1:13-cv-10799-GAO .................................................................................11

*National Federation of the Blind v. Scribd Inc.*,
  97 F. Supp. 3d 565 (D. Vt. 2015) ...............................................................8, 12

*National Federation of the Blind v. Target Corp.*,
  452 F. Supp. 2d 946 (N.D. Cal. 2006).........................................................8, 9

*New v. Lucky Brand Dungarees Stores, Inc.*,
  No. 14-CV-20574-UU (S.D. Fla. Apr. 10, 2014), DOJ Statement of Interest .................................12

*Reed v. CVS Pharmacy, Inc.*,
  2017 WL 4457508 (C.D. Cal., Oct. 3, 2017, No. CV 17-3877-MWF (SKX)) ................................13

*Robles v. Dominos Pizza, LLC*,
  2017 WL 1330216 (C.D. Cal. Mar. 20, 2017), appeal docketed, No. 17-55504 (9th
  Cir. Apr. 13, 2017) ...............................................................................13, 14

*Robles v. Yum! Brands, Inc.*,
  2018 WL 566781 (C.D. Cal., No. 2:16-CV-082110DWSS) (Jan. 24, 2018).................8, 13, 14, 17

*Shields v. Walt Disney Parks and Resorts US, Inc.*,
  279 F.R.D. 529 (C.D. Cal. 2011)......................................................................14

*United States v. AMC Entm't, Inc.*,
  549 F.3d 760 (9th Cir. 2008) ...........................................................................14

*Weyer v. Twentieth Century Fox Film Corp.*,
  198 F.3d 1104 (9th Cir. 2000) ...........................................................................8

**California Cases**

*Angelucci v. Century Super Club*,
  41 Cal. 4th 160 (2007).....................................................................................10

*City of Huntington Park v. Superior Court* (1995)
  34 Cal.App.4th 1293.......................................................................................15

*Godfrey v. Steinpress*,
  128 Cal. App. 3d 154 (Cal. App. 5th Dist. 1982)...........................................17

*Munson v. Del Taco, Inc.*,
  46 Cal.4th 661 (2009)................................................................................7, 10

*Oakes v. McCarthy Co.*,
  267 Cal. App. 2d 231 (1968) ..........................................................................17

*Rogers v. Kabakoff*,
  81 Cal. App. 2d 487 (1947) ............................................................................17

*Thurston v. Midvale Corporation*,
  Los Angeles Superior Court Case No. BC663214 (May 21, 2018) .............9, 16

*Turner v. Whittel*,
  2 Cal. App. 2d 585 (1934) ..............................................................................17

*Vaughn v. Jonas*,
 31 Cal. 2d 586 (1948) ............................................................................................17

**Federal Statutes**

Rehabilitation Act
 § 508 ..........................................................................................................10, 11

42 U.S.C.
 § 12181(9) .............................................................................................................18
 § 12182 *et seq.* ......................................................................................................7
 § 12182(a) ....................................................................................................7, 8, 11
 § 12182(b)(2)(A)(ii) ............................................................................................11
 § 12182(b)(2)(A)(iii) ...........................................................................................11
 § 12188(a) ..............................................................................................................7

 Americans with Disabilities Act ................................................................ *passim*

 Title II of the ADA ...........................................................................7, 11, 12, 15

**Federal Regulation**

28 C.F.R. § 36.303(a) ....................................................................................................18

Advance Notice of Public Rulemaking, 75 Fed. Reg. 43460 (July 26, 2010) ...........12, 16, 17

75 Fed. Reg. at 43464 ...................................................................................................12

75 Fed. Reg. at 43466 ...................................................................................................16

82 Fed. Reg. 60932 (Dec. 26, 2017) ............................................................................16

**California Statutes**

Civil Code
 § 51 *et seq.* ....................................................................................................7, 10
 § 51(b) ....................................................................................................................9
 § 51(f) .................................................................................................................7, 9
 Unruh Act ...........................................................................................7, 9, 10, 16

Code of Civil Procedure
 § 425.10(a) ...........................................................................................................18

**Other Authorities**

Settlement Agt. Between the United States of America, Louisiana Tech University, and
 the Board of Supervisors for the University of Louisiana System ............................11

Settlement Agt. Between United States of America and the National Museum of Crime
 and Punishment dated Jan. 13, 2015 .......................................................................11

Settlement Agt. Between United States of America and the Newseum, Inc. Under Title III of the Americans with Disabilities Act..................................................................11

Settlement Agt. – Nat'l Fed. of the Blind, et al. v. Law School Admissions Council dated Apr. 27, 2011. .........................................................................................11

PLAINTIFF'S TRIAL BRIEF

## I.    INTRODUCTION

Defendant San Diego County Credit Union ("Defendant") purposefully and needlessly *drastically* overcomplicates the status of website accessibility law. Defendant does so by relying on wholly inapplicable alleged affirmative defenses, and misrepresents case holdings that are not relevant.

As set forth herein, Plaintiff Abelardo Martinez ("Plaintiff") will address how the Americans with Disabilities Act of 1990 (42 U.S.C. § 12182 *et seq.*) and California's Unruh Civil Rights Act (Cal. Civ. Code § 51 *et seq.*) are used *regularly* to enforce equal access to websites by those who are blind or visually impaired, the industry-wide applicability of the WCAG 2.0, Level AA guidelines to ensure website accessibility, and the propriety for an instruction on punitive damages[1].

## II.    ELEMENTS FOR A WEBSITE ACCESSIBILITY CAUSE OF ACTION

Any violation of the ADA constitutes a violation of the Unruh Act.  Cal. Civ. Code § 51(f). Under Title III of the ADA: "No individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations **of** any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation."  42 U.S.C. § 12182(a) (emphasis added).

In order to prevail under the ADA, the following elements must be satisfied:

**(1)** the plaintiff must be disabled within the meaning of the ADA (42 U.S.C. § 12182(a));

**(2)** the subject facility must be a place of public accommodation and therefore governed by Title III of the ADA (42 U.S.C. § 12182(a)); and

**(3)** the plaintiff must have either personally encountered or have actual knowledge of an accessibility barrier precluding his full and equal enjoyment of the website.

42 U.S.C. § 12188(a); *Chapman v. Pier One Imports (U.S.), Inc.*, 631 F.3d 939, 944 (9th Cir. 2011); *see also Molski v. M.J. Cable, Inc.*, 481 F.3d 724, 730 (9th Cir. 2007) (general discussion of requirements for claims regarding improper barriers under ADA); *Munson v. Del Taco, Inc.*, 46 Cal.4th 661, 670, 678 (2009) (holding a plaintiff can recover Unruh Act damages by demonstrating an ADA violation without having to demonstrate that such violation was intentional).

---

[1] Plaintiff is concurrently filing a separate, brief with the specific objections to Defendant's proposed special verdict form and proposed special jury instructions.

1   "Courts are split on whether the ADA limits places of public accommodation to physical

2   spaces.  Courts in the First, Second, and Seventh Circuits have found that the ADA can apply to a

3   website independent of any connection between the website and a physical place.... [2]  Courts in these

4   circuits have typically looked at Congress's intent that individuals with disabilities fully enjoy the

5   goods, services, privileges and advantages available indiscriminately to other members of the public,

6   and at the legislative history of the ADA, which indicates that Congress intended the ADA to adapt to

7   changes in technology .... On the other hand, courts in the Third, Sixth, and Ninth Circuits have

8   concluded that places of public accommodation must be physical places, and that goods and services

9   provided by a public accommodation must have a sufficient nexus to a physical place in order to be

10   covered by the ADA."  *Gil v. Winn Dixie Stores, Inc.*, 242 F .Supp.3d 1315, 1318-1319 S.D. Fla. 20

11   17) (internal citations omitted).[3]

12   "The DOJ has 'repeatedly affirmed that Title III [of the ADA] applies to websites that meet the

13   definition of a public accommodation."  *Robles v. Yum! Brands, Inc.*, 2018 WL 566781, at *4 (C.D.

14   Cal., No. 2:16-CV-082110DWSS) (Jan. 24, 2018) (*quoting Gorecki v. Hobby Lobby Stores, Inc.,* 2017

15   WL 2957736, at *4 (C.D. Cal. CV 17-1131-JFW (SKx)) (June 15, 2017).  "[T]he text and purposes of

16   the ADA, as well as the breadth of federal appellate decisions, suggest that defendant's website is

17   covered under the ADA, either as its own place of public accommodation or as a result of its close

18   relationship as a service of defendant's restaurants, which indisputably are public accommodations

19   under the statute." *Market! v. Five Guys Enterprises LLC*, 2017 WL 5054568, at *2 (S.D.N.Y. No. 17-

20   CV-788 (KBF)) (July 21, 2017).

21   Here there can be no reasonable dispute that there is a nexus between Defendant's website and

22   its more than 40 places of public accommodation – its credit union branch locations – because it is

23   likewise beyond dispute that its website provides a list of its branch locations, offers non-disabled

24   users the ability to set up an appointment at one of these locations, and describes the branch locations'

25   products and services, among many other things.  42 U.S.C. § 12182(a) (precluding discrimination "in

26
27   [2] *See, e.g., National Federation of the Blind v. Scribd Inc.*, 97 F. Supp. 3d 565, 573-76 (D. Vt. 2015) (websites are places of public accommodation for purposes of ADA).

28   [3] *See also National Federation of the Blind v. Target Corp.,* 452 F. Supp. 2d 946, 954 (N.D. Cal. 2006) (ADA applies to websites where the website is heavily integrated with physical places of public accommodation and functions as a gateway thereto); *Weyer v. Twentieth Century Fox Film Corp.,* 198 F.3d 1104, 1114 (9th Cir. 2000) (establishing the nexus theory).

1   the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or

2   accommodations *of* any place of public accommodation by any person who owns, leases (or leases to),

3   or operates a place of public accommodation.") (emphasis added); www.sdccu.com.

4       Thus, with the Court's plain reading of the ADA and section 51(f) of the Unruh Act, as well as

5   the DOJ's long-standing treatment of websites as subject to the strictures of the ADA, the foregoing

6   plain and simple elements form the basis for a cause of action in the website accessibility context.  *See*

7   *Thurston v. Midvale Corporation,* Los Angeles Superior Court Case No. BC663214 (Hon. Samantha

8   P. Jessner) (May 21, 2018) (holding the defendant violated the Unruh Act by failing to provide full

9   and equal access to it website to a blind plaintiff upon disputed cross-motions for summary judgment,

10   awarding statutory damages, and prospective injunctive relief mandating compliance with WCAG 2.0,

11   Level AA); *Gil v. Winn-Dixie Stores, Inc.*, 2017 WL 2547242 (S.D. Fla. June 13, 2017) (holding after

12   a non-jury trial that the defendant, a large supermarket chain, had violated the plaintiff's rights under

13   the ADA by failing to maintain an accessible website and ordering prospective compliance with

14   WCAG 2.0, Level AA in its intended injunction); *Davis v. BMI/BNB Travelware Company dba*

15   *Colorado Bag'n Baggage*, San Bernardino Superior Case No. CIVDS1504682 (Hon. Bryan F. Foster)

16   (March 21, 2016) (holding the defendant violated the Unruh Act by failing to provide full and equal

17   access to it website to a blind plaintiff upon disputed motion for summary judgment, awarding

18   statutory damages, and prospective injunctive relief mandating compliance with WCAG 2.0, Level

19   AA).

20       Indeed, some court have held that websites are "business establishments" within the meaning

21   of the Unruh Act without the need of any nexus to a physical location.  Courts have consistently held

22   that the language of the Unruh Act "is broader than that of the ADA" such that it is not limited to

23   restrictions on access to a place of public accommodation in the same way as the ADA is limited

24   because the Unruh Act regulates "all business establishments of every kind whatsoever." Cal. Civ.

25   Code § 51(b); *Target*, 582 F. Supp. 2d at 1196 ("the Unruh Act and the DPA reach Target.com as a

26   kind of business establishment and an accommodation, advantage, facility, and privilege of a place of

27   public accommodation respectively. ***No nexus to the physical stores need be shown***.") (emphasis

28   added); *Butler v. Adoption Media, LLC*, 486 F. Supp. 2d 1022, 1056 (N.D. Cal. 2007) ("***the***

1    *ParentProfiles.com website is plainly a business establishment as defined under California law*.")

2    (emphasis added) (citing a California Supreme Court case for the proposition that the California

3    Legislature intended the Unruh Act's definition of "business establishments" to be interpreted "in the

4    broadest sense reasonably possible"). The California Supreme Court has held that the Unruh Act is to

5    be "construed liberally" in order to carry out its purpose to eradicate discrimination. *Munson*, 46 Cal.

6    4th at 666 (quoting *Angelucci v. Century Super Club*, 41 Cal. 4th 160, 167 (2007)).

7    **III.    THE WEBSITE CONTENT ACCESSIBILITY GUIDELINES ("WCAG") PROVIDE**

8    **THE INDUSTRY STANDARD FOR WEBSITE ACCESSIBILITY AND ARE RELIED UPON**

9    **BY DEFENDANT'S OWN PERSON MOST KNOWLEDGEABLE.**

10    The Level AA Success Criteria under version 2.0 of the Web Content Accessibility Guidelines

11    ("WCAG"), published by W3C, has been widely relied upon as an appropriate measure to evaluate

12    and ensure the accessibility of commercial websites for visually-impaired persons by the DOJ on

13    *numerous* occasions, as well as by courts in several instances.  The federal government's Access

14    Board, through a refresh of § 508 of the Rehabilitation Act which was finalized in January 2017, has

15    virtually adopted the WCAG guidelines.  *Gil v. Winn-Dixie Stores, Inc.*, 2017 WL 2547242, at *5

16    (S.D. Fla. June 13, 2017). Under the WCAG 2.0 AA Guidelines, Defendant's website falls short in a

17    number of critical respects, confirming the difficulties that Plaintiff experienced in attempting to

18    access Defendant's website.  Indeed, ***Defendant references and relies upon the WCAG 2.0 guidelines***

19    ***throughout* *its document production in this case as well as in its person most knowledgeable's***

20    ***deposition testimony***.  (*See* SDCCU000006, 13, 15, 36, 38, 40, 41, 65-67, 79; Schmidt Depo. at 59:12,

21    59:14,17, 60:7, 61:15, 61:22, 62:6, 62:23, 63:2, 3:8,17, 64:7, 65:6, 65:8, 66:2, 66:18, 69:4, 69:16,24,

22    72:23, 93:8, 93:15, 94:1, 94:20, 95:2, 95:14, 102:10, 103:21,25, and 104:11).

23    It should be noted that in Plaintiff's Complaint, Plaintiff prays for injunctive relief pursuant to

24    California Civil Code § 51 *et seq.* to require Defendant to take the steps necessary to make

25    Defendant's website "readily accessible to and usable by visually-impaired individuals." (Compl. at

26    Prayers 1, 2).  Plaintiff relies on the WCAG 2.0 guidelines as the broadly adopted industry standard for

27    measuring and ensuring website accessibility, and as a *remedy* that may be ordered by the court, as

28    others have done, to accomplish appropriate injunctive relief.

1    Over the years, the DOJ has *consistently* enforced the ADA against commercial websites and

2    obtained consent decrees and settlement agreements ensuring that commercial website conform to *at*

3    *least* WCAG 2.0 Level AA Success Criteria.[4]   Beside the aforementioned consent decrees, the DOJ

4    has similarly relied upon WCAG 2.0 AA as an appropriate measure to ensure compliance with the

5    ADA relating to private websites of public accommodations in *multiple* public settlement agreements.[5]

6    Defendant attempts to overly complicate the use of WCAG 2.0 by acknowledging that there

7    are three Levels of website accessibility compliance: A, AA, and AA, and that WC3 recently

8    published WCAG 2.1; however, this is wholly irrelevant as Level AA is the industry-wide standard, is

9    utilized by the federal government via section 508 of the Rehabilitation Act, and is utilized by the DOJ

10   and courts.

## IV.   PLAINTIFF'S CAUSE OF ACTION DOES NOT VIOLATE DEFENDANT'S DUE PROCESS RIGHTS.

13   Defendant's contention that Plaintiff's cause of action violates due process is wrong.

14   Defendant ignores the fact that, as acknowledged by *numerous* courts *and* the DOJ as set forth above,

15   the existing ADA statutes have long-covered commercial websites via its general non-discrimination

16   provision (42 U.S.C. § 12182(a)), its reasonable modifications in policies, practices, or procedures

17   provision (42 U.S.C. § 12182(b)(2)(A)(ii)), or via its auxiliary aid provision (42 U.S.C. §

18   12182(b)(2)(A)(iii)). Plaintiff is relying upon unambiguous regulations promulgated by the DOJ

19   *decades ago*, and since that time have been consistently applied to websites.

20   / / /

21   / / /

22

---

23   [4] *See, e.g.*, *National Fed. of the Blind, et al. v. HRB Digital LLC, et al.*, No. 1:13-cv-10799-GAO, Consent Decree [ECF #60 at pg. 5] (D. Mass. Mar. 24, 2014) ("conform to, at minimum, the Web Content Accessibility Guidelines 2.0 Level A and AA Success Criteria ("WCAG 2.0 AA").") ; *see also* Settlement Agt. Between United States of America and Ahold U.S.A. Inc. and Peapod, LLC, DJ #202-63-169, ¶ 12(b); Settlement Agt. Between the United States of America and edX Inc., DJ #202-36-255, ¶ 18(a).

26   [5] (1) Settlement Agt. – *Nat'l Fed. of the Blind, et al. v. Law School Admissions Council* dated Apr. 27, 2011; (2) Settlement Agt. Between the United States of America, Louisiana Tech University, and the Board of Supervisors for the University of Louisiana System Under the Americans with Disabilities Act, DJ #204-33-116, ¶¶ 13(a), 14 & Ex. 1; (3) Settlement Agt. Between the United States of America and the National Museum of Crime and Punishment dated Jan. 13, 2015 ¶ 21; and (4) Settlement Agt. Between the United States of America and the Newseum, Inc. Under Title III of the Americans with Disabilities Act, DJ #202-16-190, ¶ 20.  The settlement agreements are available for viewing on the DOJ's Civil Rights Division's website at https://www.ada.gov/enforce_current.htm (last visited June 30, 2017).

A.   **The DOJ Has Consistently Maintained that Commercial Websites Are Subject to the ADA For Over 20 Years.**

The DOJ has consistently maintained that commercial websites must be accessible despite the absence of exact website accessibility standards due to the ADA's general non-discrimination requirements and implementing regulations.[6]   The position that the currently existing ADA and its implementing regulations do, in fact, cover the accessibility of commercial websites for sight-impaired users is a position that the DOJ has consistently maintained in public <u>dating back to at least 1996</u>, thus, Defendant has had notice of its obligation to make the website associated with its places of public accommodation accessible. *National Federation of the Blind v. Scribd Inc.*, 97 F. Supp. 3d 565, 574 (D. Vt. 2015) (citing Letter from Deval L. Patrick, Assistant Att'y Gen., to Senator Tom Harkin (Sept. 9, 1996) ("Covered entities under the ADA are required to provide effective communication, regardless of whether they generally communicate through print media, audio media, or ***computerized media such as the Internet***.") (emphasis added)); 75 Fed. Reg. 43460, 43464 (July 26, 2010) ("The Department has… repeatedly affirmed the application of title III to Web sites of public accommodations.") ("**the Department has been clear that the ADA applies to Web sites of private entities that meet the definition of 'public accommodations**.'") (emphasis added);[7] *New v. Lucky Brand Dungarees Stores, Inc.*, No. 14-CV-20574-UU (S.D. Fla. Apr. 10, 2014), DOJ Statement of Interest brief ("[*T]he Department has long considered <u>websites to be covered by title III despite the fact that there are no specific technical requirements for websites currently in the regulation or ADA Standards*</u>.  [citations omitted].").

In *Nat'l Ass'n of the Deaf v. Harvard Univ.*, Case 3:15-cv-30023-MGM [ECF #33] (D. Mass. June 25, 2015), which raised a Title III ADA claim related to website accessibility, the DOJ filed a

---

[6] The DOJ's position that the ADA and its implementing regulations are currently enforceable against website owners to ensure the accessibility is entitled to deference in the federal courts, and thus should be deferred to here as well.  *Disabled Rights Action Committee v. Las Vegas Events, Inc.*, 375 F.3d 861, 876 (9th Cir. 2004); *Fortyune v. City of Lomita*, 766 F.3d 1098, 1104 (9th Cir. 2014), *cert. denied*, 135 S. Ct. 2888 (2015); *M.R. v. Dreyfus*, 697 F.3d 706, 735 (9th Cir. 2012).

[7] *See also id.* at 43463 ("the statute's broad and expansive nondiscrimination mandate reaches goods and services provided by covered entities on Web sites over the Internet.") ("the ADA mandate for 'full and equal enjoyment' requires nondiscrimination by a place of public accommodation in the offering of all its goods and services, including those offered via Web sites."); *id.* at 43465 ("The Department believes that title III reaches the Web sites of entities that provide goods or services that fall within the 12 categories of 'public accommodations,' as defined by the statute and regulations.").

1   Statement of Interest opposing Harvard University's motion to dismiss for failure to state a claim and

2   motion to dismiss on jurisdictional grounds.  In particular, the DOJ noted:

3         "[The ADA] *currently* obligate[s] Harvard to provide effective communication to ensure equal

4   access to its online programming services, and resolution of Plaintiffs' claim involves a

5   straightforward application of longstanding statutory and regulatory requirements.  For more than two

6   decades, federal courts have resolved effective communication claims brought under the ADA . . . in a

7   wide range of contexts, including claims alleging unequal access to goods, benefits and services

8   provided through websites or other electronic media."

9         (Statement of Interest at 2) (emphasis in original).  The DOJ described "the heart of this case"

10  as "a straightforward claim that Harvard failed to provide auxiliary aids or services necessary to ensure

11  effective communication and equal access to Harvard's online programming." *Id.* at 8.  The DOJ urged

12  the court to "**reject Harvard's attempt to convert a clear-cut ADA claim into something**

13  **dependent on future rulemaking**."  *Id.* at 11 (emphasis added).

14        **B.**        **Courts Are *Repeatedly* Rejecting Defendant's Due Process Argument.**

15        Defendant fails to acknowledge that *numerous* courts have rejected Defendant's due process

16  argument in the website accessibility context, many more recently than in *Robles v. Dominos Pizza,*

17  *LLC*, 2017 WL 1330216 (C.D. Cal. Mar. 20, 2017), appeal docketed, No. 17-55504 (9th Cir. Apr. 13,

18  2017), a case upon which Defendant relies heavily despite being currently on appeal and positioned to

19  be overturned. For example, in *Gorecki v. Hobby Lobby Stores, Inc.*, 2017 WL 2957736 (C.D. Cal.,

20  June 15, 2017, No. CV 17-1131-JFW(SKX)), issued <u>after</u> the *Robles* decision, the district court

21  considered the same due process and primary jurisdiction arguments raised by Defendant, but rejected

22  them expressly via a detailed analysis. *Hobby Lobby* addresses the due process issue by pointing out

23  notice existed dating back to 1996, and thus the DOJ's position has been consistently maintained for

24  over 20 years.  *Hobby Lobby*, *id.* at n.3, 7.  The *Hobby Lobby* decision expressly refers to the need of

25  courts to provide "substantial deference" to the DOJ's interpretations of the ADA and it being

26  currently applicable to websites.  *Id.* at 4 n.2; *see also Reed v. CVS Pharmacy, Inc.*, 2017 WL

27  4457508, at *5 (C.D. Cal., Oct. 3, 2017, No. CV 17-3877-MWF (SKX)) (rejecting due process and

28

1    primary jurisdiction arguments and likewise rejecting any reliance upon *United States v. AMC Entm't,*
2    *Inc.*, 549 F.3d 760 (9th Cir. 2008) and/or the *Robles v. Dominos Pizza* decision).

3            Defendant similarly fails to address the Honorable Jack B. Weinstein's recent order in *Andrews*
4    *v. Blick Art Materials, LLC*, No. 17-CV-767, 2017 WL 3278898 (E.D.N.Y., Aug. 1, 2017) which
5    addressed and rejected the same due process and primary jurisdiction arguments raised by Defendant
6    in the website accessibility context.  Indeed, Judge Weinstein acknowledged that the *Robles* decision
7    relied upon by Defendant as "the only case supporting this argument" (referring to the defendant's due
8    process rights). *Blick Art Materials*, at \*17 (emphasis added). Substantively, in applying the ADA
9    implementing regulations, Judge Weinstein stated, "[Defendant] does not point to any word or term
10   that is unconstitutionally vague. A statute's use of the word 'reasonable' and similar terms is not
11   constitutionally problematic." *Id.* The Court rejected the absence of published standards argument
12   relied upon by Defendant and concluded, "The defendant's principal complaint appears to be that it
13   wants there to be black-and-white rules for ADA compliance, and here, there may be shades of gray.
14   But the anti-discrimination provisions the defendant is accused of violating are not simple checklists of
15   clear-cut rules—they are standards that are meant to be applied contextually and flexibly."[8]

16           Defendant's argument also ignores another case more recently decided than *Robles*, the Verdict
17   and Order Following Non-Jury Trial in *Gil v. Winn-Dixie Stores, Inc.*, 257 F.Supp.3d 1340 (S.D. Fla.
18   June 13, 2017), whereby the District Court for the Southern District of Florida held a non-jury trial and
19   found that the defendant, a large supermarket chain, had violated the plaintiff's rights under the ADA
20   by failing to maintain an accessible website.  There the court applied an "undue burden" legal standard
21   in concluding that "Winn-Dixie has presented no evidence to establish that it would be unduly
22   burdensome to make its website accessible to visually impaired individuals." *Winn-Dixie* Verdict at
23   1350. Furthermore, the *Winn-Dixie* court also framed that case as seeking a modification of a policy,
24   practice, or procedure. *Id.*  What is more, the court in *Winn-Dixie* adopted the WCAG 2.0 accessibility
25   standards for making the defendant's website accessible in its intended injunction.  *Id.* at 1350-51.[9]

26
27   [8] *See also Access Now, Inc., et al. v. Blue Apron, LLC* (D.N.H., Nov. 8, 2017, No. 17-CV-116-JL) 2017 WL 5186354, at \*1
     (rejecting the Defendant's due process and primary jurisdiction arguments in the website accessibility context upon a
     motion to dismiss).
28   [9] *See also Shields v. Walt Disney Parks and Resorts US, Inc.*, 279 F.R.D. 529, 559 (C.D. Cal. 2011) (rejecting as
     "unpersuasive" Disney's argument that "there is no accepted accessibility standard" and the argument that the DOJ has yet
     Continued on the next page

PLAINTIFF'S TRIAL BRIEF

1   This approach has been confirmed by the Superior Court.  In March 2016, the San Bernardino

2   Superior Court held, upon a contested motion for summary judgment, that,

3          "Plaintiff [] has presented sufficient evidence and legal argument to conclude ***Title III of the***

4          ***ADA applies to plaintiff's use of a website where plaintiff has demonstrated he sought goods***

5          ***and services from a place of public accommodation because he demonstrated a sufficient***

6          ***nexus exists between defendant's retail store and its website that directly affects plaintiff's***

7          ***ability to access good and services***. Plaintiff also presented sufficient evidence that he was

8          denied full and equal enjoyment of the goods, services, privileges, and accommodations

9          offered by defendant because of his disability."

10   *Davis v. BMI/BNB Travelware Company dba Colorado Bag'n Baggage*, San Bernardino Superior

11   Case No. CIVDS1504682 (Hon. Bryan F. Foster) (March 21, 2016) (emphasis added).  Indeed, the

12   court likewise ruled that the defendant in *BMI/BNB Travelware* must conform its website to comply

13   with the guidelines set forth in WCAG 2.0, AA.  *Id.*

14   Even more recently, on May 21, 2018, upon cross-motions for summary judgment in the

15   website accessibility context, the Hon. Samantha Jessner of the Los Angeles Superior Court granted

16   the plaintiff's motion for summary judgment, awarded $4,000 in statutory damages, and ordered

17   prospective compliance with WCAG 2.0, Level AA:

18          "Defendant's separately filed motion for summary judgment is MOOT…. Moreover,

19          Defendant's constitutional arguments in its separate motion are not sufficient to demonstrate

20          that it did not violate the ADA, and therefore the court need not reach these issues. *(City of*

21          *Huntington Park v. Superior Court* (1995) 34 Cal.App.4th 1293, 1299 ("we have an obligation

22          to avoid deciding constitutional questions unless it is absolutely necessary to do so.").) The

23          court similarly rejects Defendant's primary jurisdiction argument raised in its separate motion.

24          (*See e.g. Del-Orden v. Bonobos, Inc.* (S.D.N.Y., Dec. 20, 2017, No. 17 CIV. 2744 (PAE)) 2017

25          WL 6547902, at *15 ("Under these circumstances, the doctrine of primary jurisdiction does not

26

27   Continued from the previous page

28   to determine what standards to apply to websites and stating, "***The lack of a widely accepted standard for website accessibility does not preclude injunctive relief that would improve access to Defendants' websites by the visually impaired***.")  (emphasis added.).

counsel in favor of abstention. It is unknown when, if at all, the DOJ will issue regulatory standards addressing the ADA's standards governing website access. Open-ended abstention in favor of regulatory guidance that may never come would disserve the interest of Del-Orden … in resolution of his ADA claim.").) Furthermore, Plaintiff has established standing under the Unruh Act. (*See e.g. Osborne v. Yasmeh* (20 16) 1 Cal.App.5[th] 1118, 1127 ("Standing under the Unruh Act is broad.").)"

*Thurston v. Midvale Corporation*, Los Angeles Superior Court Case No. BC663214 (Hon. Samantha P. Jessner) (May 21, 2018).

Based on the foregoing, the court may readily dismiss Defendant's due process concerns just as numerous other courts and the DOJ has done.

## C. The DOJ Withdrew Its Advance Notice of Public Rulemaking and *Still* Enforces Website Accessibility Under the ADA Utilizing WCAG 2.0, Level AA.

In 2010, the DOJ issued an Advance Notice of Public Rulemaking ("ANPRM"), 75 Fed. Reg. 43460 (July 26, 2010) regarding the possibility of publishing website accessibility standards.  Therein the DOJ indicated "an accessible alternative, such as a staffed telephone line" "***may***" constitute compliance with the ADA – not that it definitely ***does*** constitute compliance with the ADA.  75 Fed. Reg. at 43466.  However, the ANPRM merely offered non-binding *guidance* about a potential future regulation, not an affirmative defense to an ADA cause of action based on website accessibility.

What is more, the DOJ *withdrew* its ANPRM on December 26, 2017, stating, "The Department is evaluating whether promulgating regulations about the accessibility of Web information and services is _necessary_ and appropriate."  Nondiscrimination on the Basis of Disability; Notice of Withdrawal of Four Previously Announced Rulemaking Actions, 82 Fed. Reg. 60932 (Dec. 26, 2017) (emphasis added).

Indeed, even *after* the DOJ's withdrawal of it ANPRM, it has entered into yet another settlement agreement utilizing, at minimum, WCAG 2.0 Level A and Level AA Success Criteria, requiring the state and city of Denver to make their websites equally accessible.  *See* https://www.justice.gov/opa/press-release/file/1022691/download; *see also Castillo v. Jo-Ann Stores, LLC,* 286 F. Supp. 3d 870 (N.D. Ohio Feb. 13, 2018); *Gathers v. 1-800-Flowers.com, Inc.,* 2018 WL

839381, at *3 (D. Mass. Feb. 12, 2018) ("DOJ's rulemaking process has no impact on the fitness of this case for adjudication."); *Robles v. Yum! Brands, Inc. d/b/a Pizza Hut,* 2018 WL 566781, at *5 (C.D. Cal. Jan. 24, 2018).

The DOJ's withdrawal of its ANPRM confirms a couple key points: (1) the ADA and its implementing regulations *continue* to apply to websites of public accommodations; and (2) Defendant's legal obligations with respect to its website under Title III are sufficiently clear without further regulatory action.

## V.   PLAINTIFF'S REQUEST FOR A PUNITIVE DAMAGES INSTRUCTION IS SUPPORTABLE.

A plaintiff need not specifically pray for punitive damages in his prayer for relief in order to seek, or for the court to give instruction on, the possibility of punitive damages. "It is settled law in California that where the *body* of the complaint sets forth facts upon which an award of punitive damages may be predicated, the trier of fact can award punitive damages even in the complete absence of a prayer." *Godfrey v. Steinpress*, 128 Cal. App. 3d 154, 182 (Cal. App. 5th Dist. 1982) (citing *Rogers v. Kabakoff*, 81 Cal. App. 2d 487, 491-492 (1947); *Turner v. Whittel*, 2 Cal. App. 2d 585, 590 (1934); *Oakes v. McCarthy Co.*, 267 Cal. App. 2d 231, 264 (1968); *Vaughn v. Jonas*, 31 Cal. 2d 586, 606 (1948) ("The fact that exemplary damages find no express mention in the prayer of the complaint does not preclude the allowance of such damages upon a contested trial.").)

Here, in his Complaint, Plaintiff specifically alleged that it is Defendant's "policy and practice to deny blind users, including Plaintiff, equal access to sdccu.com." (Cmpl., ¶ 12). Additionally, Plaintiff also alleged that "Defendant's actions constitute intentional discrimination against Plaintiff . . . ." (Cmpl., ¶ 20). As such, Defendant was affirmatively on notice that Plaintiff may seek punitive damages for its wrongful and discriminatory conduct.

## VI.   PLAINTIFF'S REQUEST FOR JUDICIAL NOTICE REGARDING CENSUS DATA IS SUPPORTABLE.

In his request for judicial notice, Plaintiff seeks to admit highly relevant evidence of the approximate 214,832 visually disabled consumers who qualify for membership with Defendant. First,

1   Plaintiff is relying on the federal statute and regulation regarding auxiliary aids and services (28 C.F.R.

2   sec. 36.303(a)) which states:

3   > "A public accommodation shall take those steps that may be necessary to ensure that no

4   > individual with a disability is excluded, denied services, segregated or otherwise treated

5   > differently than other individuals because of the absence of auxiliary aids and services, unless

6   > the public accommodation can demonstrate that taking those steps would fundamentally alter

7   > the nature of the goods, services, facilities, privileges, advantages, or accommodations being

8   > offered or would result in an undue burden, i.e., significant difficulty or expense."

9   It is relevant for a public accommodation to know how many disabled individuals the auxiliary

10   aid or service, i.e., an accessible website that is compatible with standard screen reading software,

11   would benefit in deciding how much of a cost investment is reasonable to remediate a website.

12   Second, Defendant has asserted the readily achievable barrier removal defense as the 12th

13   affirmative defense in its answer.  Although Plaintiff does *not* concede that the defense applies to

14   communication barriers like the website barriers at issue, a cost-benefit analysis is relevant to what is

15   "readily achievable" and what constitutes an "undue burden," Defendant's eighth asserted affirmative

16   defense.  "The term "readily achievable" means easily accomplishable and able to be carried out

17   without much difficulty or expense."  42 U.S.C. § 12181(9) ("In determining whether an action is

18   readily achievable, factors to be considered include--(A) the nature and cost of the action needed under

19   this chapter.")  As such, the number of disabled users being denied equal access to Defendant's

20   website is relevant to several of Defendant's alleged affirmative defenses.

21   **VII.   PLAINTIFF MAY SUBMIT EVIDENCE OF ACCESSIBILITY BARRIERS OTHER**

22   **THAN THOSE IDENTIFIED IN THE COMPLAINT *AND* INTERROGATORY RESPONSES.**

23   Defendant's second motion in limine to exclude reference to "unplead alleged barriers" was

24   reserved by the Court on November 8, 2018.  First, Defendant's motion should be denied because it

25   does not comport with California's pleading standard.  Plaintiff's complaint met the requirements of

26   section 425.10(a) of the Code of Civil Procedure

27   Second, Plaintiff's discovery responses likewise were not limited to the four types of

28   accessibility barriers identified by Defendant: "Plaintiff seeks to have www.sdccu.com readily

accessible to and usable by himself and other visually-impaired individuals via the removal of all accessibility barriers thereon, including but not limited to the remediation of empty or redundant links, instances of missing or redundant alternative text, and missing form labels. Each barrier on the website prevents full and equal accessibility thereto by Plaintiff and other blind and/or visually impaired individuals. Specifically, Plaintiff was unable to successfully browse Defendant's website or accurately and efficiently gain information about Defendant's products and services. Specifically, several links were either incorrectly or insufficiently labeled." (Leimkuhler Decl., Ex. B).  Indeed, via Plaintiff's objections to Defendant's interrogatory, Plaintiff acknowledged that to identify all accessibility barriers present throughout Defendant's website, an expert opinion would be required.  (*Id.*)

After receiving the foregoing discovery response, Defendant did not meet and confer with Plaintiff, nor move to compel a further response.  Instead, it moved forward with Plaintiff's deposition where he testified *at length* about the accessibility barriers he encountered.  Thereafter, Plaintiff's expert further put Defendant on notice of still more accessibility barriers present on the website.

Lastly, and perhaps more importantly, **a plaintiff need not personally encounter each barrier related to his disability to have it removed**: "[W]e hold that an ADA plaintiff who establishes standing as to encountered barriers may also sue for injunctive relief as to unencountered barriers related to his disability." *Chapman v. Pier One Imports (U.S.), Inc.*, 631 F.3d 939, 944 (9th Cir. 2011). Thus, as long as Plaintiff personally encountered at least one barrier preventing his full and equal enjoyment of Defendant's website, Plaintiff is entitled to have all communication barriers removed by Defendant, and as such, *all* potential barriers present throughout Defendant's website are relevant evidence, whether they were identified in the pleadings, discovery responses, depositions, or not.

Dated:  November 12, 2018

PACIFIC TRIAL ATTORNEYS
A Professional Corporation

By:_____

Scott J. Ferrell
Attorneys for Plaintiff

**PROOF OF SERVICE**
**STATE OF CALIFORNIA, COUNTY OF ORANGE**

      I am employed in the County of Orange, State of California.  I am over the age of 18 and not a party to the within action; my business address is 4100 Newport Place, Suite 800, Newport Beach, CA 92660.

      On November 12, 2018, I served the foregoing document described as **PLAINTIFF'S TRIAL BRIEF** on the following person(s) in the manner indicated:

**SEE ATTACHED SERVICE LIST**

[ ]    (BY MAIL)  I am familiar with the practice of Pacific Trial Attorneys for collection and processing of correspondence for mailing with the United States Postal Service.  Correspondence so collected and processed is deposited with the United States Postal Service that same day in the ordinary course of business.  On this date, a copy of said document was placed in a sealed envelope, with postage fully prepaid, addressed as set forth herein, and such envelope was placed for collection and mailing at Pacific Trial Attorneys, Newport Beach, California, following ordinary business practices.

[ ]    (BY OVERNIGHT EXPRESS)  I am familiar with the practice of Pacific Trial Attorneys for collection and processing of correspondence for delivery by overnight courier.  Correspondence so collected and processed is deposited in a box or other facility regularly maintained by FedEx Overnight that same day in the ordinary course of business. On this date, a copy of said document was placed in a sealed envelope designated by FedEx Overnight with delivery fees paid or provided for, addressed as set forth herein, and such envelope was placed for delivery by FedEx Overnight at Pacific Trial Attorneys, Newport Beach, California, following ordinary business practices.

[ ]    (BY HAND DELIVERY)  I am familiar with the practice of Pacific Trial Attorneys for collection and processing of correspondence for hand delivery by courier.  I caused such document to be delivered by hand to the addressee(s) designated.

[ X ]  (BY ELECTRONIC SERVICE) I am causing the document(s) to be served by email or electronic transmission via One Legal sent on the date shown below to the email addresses of the persons listed in the attached service list.

[ ]    (BY ELECTRONIC TRANSMISSION)  I served electronically from the electronic notification address of brice@pacifictrialattorneys.com the document described above and a copy of this declaration to the person and at the electronic notification address set forth herein.  The electronic transmission was reported as complete and without error.

      I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct, and that this declaration was executed on November 12, 2018, at Newport Beach, California.

_____
Mandy K. Jung

1

**SERVICE LIST**

2

Gregory F. Hurley                                    Attorneys for Defendant, SAN DIEGO COUNTY
Bradley J. Leimkuhler                                CREDIT UNION

3

SHEPPARD, MULLIN, RICHTER
& HAMPTON, LLP

4

650 Town Center Drive, 4th Floor
Costa Mesa, California 92626-1993

5

Tel: (714) 513-5100
Fax: (714) 513-5130

6

Email:  ghurley@sheppardmullin.com
           bleimkuhler@sheppardmullin.com

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

PROOF OF SERVICE